DOMENGEAUX, Judge.
Acting under the authority of R.S. 33:-2737 and 33:2737.2, and after approval by a majority of the qualified electors of the parish at a special election held for that purpose, the Lafayette Parish School Board, plaintiff-appellee herein, adopted a “Sales and Use Tax Ordinance”, levying a tax of one per cent upon sales at retail, the use, the lease or rental, the consumption and storage for use or consumption of tangible personal property, and upon sales of services within the Parish of Lafayette, Louisiana. Alleging that defendant-appel *351 lant The General Tire and Rubber Company is a dealer within the meaning of the ordinance, and therefore subject to its provisions, the school board filed suit against the tire company for unpaid sales taxes, interest, penalties and attorney fees as provided for in the ordinance. Defendant in answer, alleged that it maintains no retail or wholesale outlets in Lafayette Parish, nor does it have salesmen or other employees therein, and makes no sales nor transacts any business in said Parish, and therefore is not subject to the ordinance in question.
From an adverse judgment defendant has appealed suspensively to this court. The issues are: 1) is appellant a dealer engaging in business in Lafayette Parish as defined in the subject ordinance; 2) does appellant make sales at retail to its “national accounts” in Lafayette Parish, and, 3) does the imposition of a sales tax on appellant deprive it of its constitutional rights under the Constitutions of the United States and the State of Louisiana?
The record discloses the following facts: Defendant, The General Tire and Rubber Company (hereinafter referred to as “General”) is a foreign corporation qualified to do business in the State of Louisiana, and has appointed an agent for service of process. It is a national concern, manufacturing tires, tubes, batteries and other products. Massart Supply, Incorporated, (hereinafter referred to as “Massart”) is a Louisiana corporation domiciled in Lafayette Parish, Louisiana and is the exclusive distributor for the products of General in said parish. Massart is the only business in Lafayette Parish that buys tires from General, and they sell some at retail, some at fleet prices and some to automobile companies on a wholesale basis for resale. The only transactions sought to be made subject to the sales tax in this case are the ones involving the “national accounts” of appellant. (The transactions involving national accounts will be discussed hereinafter.) Although General does not directly advertise its products in Lafayette Parish, Massart does so advertise in the local daily newspaper and in the yellow pages of the Lafayette telephone directory and in those advertisements it is stated that Massart is the dealer for The General Tire and Rubber Company. General contributes to the cost of such advertisements. Massart handles only General tires and orders them from General as needed on an open account basis payable every 30 days. Mas-sart’s inventory of tires and other merchandise from General are purchased by Massart by order from appellant’s warehouse in Houston, Texas. None of the merchandise and inventory held by Massart is on consignment basis. General maintains a representative who resides in Lake Charles (Calcasieu Parish, Louisiana) and he makes regular calls on its dealers, including Massart, to assist in the handling of General’s products. Also upon request by Massart, he calls upon customers in Lafayette Parish, whether local or “national account” variety.
The basic problem presented herein relates to the status of General’s national accounts handled by Massart as distinguished from Massart’s other business transactions. General’s national accounts result from an agreement called a “national account agreement” which it enters into with certain customers, under the terms of which General agrees to sell to the particular customer, tires, tubes and other products at specified prices and discounts as evidenced by price lists and schedules of discounts attached to the contract. Under the contract agreement between General and its customer, the customer agrees to purchase a certain minimum dollar volume of General’s products per year. Deliveries of the products purchased by the customer are made by General or through its authorized dealers located at various points throughout the United States. Massart is such a dealer or distributor. General furnishes its dealers, including Massart, with instructions concerning the manner and means whereby the customer may secure the tires or other products. General also furnishes its dealers or distributors with invoices for *352 handling these particular types of accounts. Included in the manuals and publications which General sends to its dealers, including Massart, is a list of all customers eligible to purchase General’s products under the national account agreement, as well as a current copy of all national accounts listings. The national accounts customers may be solicited by Massart, or said customers may call upon Massart for the furnishing of the aforementioned products. The national accounts customer, after contact is made with Massart, indicates to Mas-sart the type of tire (or other product) desired, at which time Massart, after satisfying itself that the customer is one of General’s national accounts customers, fills out a delivery receipt on a form captioned “The General Tire and Rubber Company Delivery Receipt”. The national accounts customer signs the receipt and a purchase order is obtained when the sale is completed. The tire furnished the customer comes out of the inventory stock which Massart keeps on hand. Massart then removes the old tires from the customer’s vehicle and mounts thereon the new tires. The delivery receipt is then sent by Massart to General and General bills the national accounts customer. Massart never sees the actual bill, nor is Massart cognizant of the price paid by the national account customer to General. General then pays Massart for the tire taken out of stock through a credit memo, this payment being on the basis of Massart’s cost, in addition to a commission paid on the sale. Should an adjustment on the tire or the product become necessary, Massart replaces the tire and sends the old tire to General’s warehouse at Houston, Texas. The actual adjustment is made by. General.
Sec. 1.04 of the Ordinance in question reads as follows:
“ ‘Dealer’ shall include every person who:
(1) manufactures or produces tangible personal property for sale at retail, for use, or consumption, or distribution or for storage to be used or consumed in this Parish;
(2) imports, or causes to be imported, tangible personal property from any State, or other political subdivision of this State, or foreign country, for sale at retail, or for use, or consumption, or distribution or storage to be used or consumed in this Parish;
3) sells at retail, or who offer to sell at retail, or who has in his possession for sale at retail, or for use, or consumption, or distribution or storage to be used or consumed in this Parish, tangible personal property;
4) has sold at retail, or used, or consumed, or distributed or stored for use or consumption in this Parish, tangible personal property and who cannot prove that the tax levied by this ordinance has been paid on the sale at retail, the use, the consumption, the distribution, or the storage of said tangible personal property;
* * * * * *
9) is engaging in business in this Parish.”
Section 1.07 of said statute reads as follows:
“ ‘Engaging in business in this Parish’ shall mean and include any of the following methods of transacting business: maintaining directly, indirectly, or through a subsidiary, an office, distribution house, sales house, warehouse or other place of business or by having an agent, salesman, solicitor or employee operating within this Parish under the authority of the seller or its subsidiary, irrespective of whether such place of business, agent, salesman, solicitor or employee is located in this Parish permanently or temporarily, or whether such seller or subsidiary is qualified to do business in this Parish; or by having within this Parish any choses in or causes of action, or any property, or any liens on property, or any indebtedness due it in this Parish, protected by the laws and courts of this Parish.”
*353 Section 1.17 defines “sale” as follows:
“ ‘Sale’ shall mean any transfer of title or possession, or both, exchange, barter, lease, or rental, conditional or otherwise, in any manner or by any means, whatsoever, of tangible personal property for a consideration, and includes the fabrication of tangible personal property for consumers who furnish, either directly or indirectly, the materials used in fabrication work, and the furnishing, preparing or serving, for a consideration, of any tangible personal property consumed on the premises of the person furnishing, preparing or serving such tangible personal property. A transaction whereby the possession of tangible personal property is transferred but the seller retains title as security for the payment of the price shall be deemed a sale * * * ”
Plaintiff school board contends that General is a dealer engaged in business in Lafayette Parish, Louisiana consisting of the sales of its products through its local distributor Massart and therefore is a dealer as defined by Sec. 1.04 of the ordinance in question, and that Massart is General’s agent in Lafayette Parish.
General, on the other hand, strongly contends that it does not sell at retail in Lafayette Parish, and therefore is not subject to the ordinance. It further says that it does not have title to the products sold to national accounts customers, but rather, that title and possession are vested with Massart at the time of the delivery to Mas-sart.
We readily conclude that General makes sales at retail to its national accounts customers in Lafayette Parish and is therefore a dealer as defined in the ordinance in question. Massart considers itself to be a distributor of General. Massart purchases tires from General as they are desired or needed. When a national accounts customer comes to Massart for a tire, it is furnished, and the delivery receipt referred to hereinabove is sent to General’s Accounting Department containing all pertinent information, and a copy of said receipt is then returned to Massart by General which contains information concerning the price of the tire, the handling commission and the federal excise tax. The tire which Massart delivers to the national accounts customer is not replaced but Massart is given a credit therefor. When sales are made on a national account, General becomes responsible to Massart for the credit, the commission and the federal tax. Should this same purchase be made by a customer who is not a national account, the purchaser would pay Massart directly. The national account agreement is not a sale. It is simply an agreement by General’s customer to purchase, and by General to sell, a minimum dollar amount of merchandise during a specified period, with General agreeing to sell its product and make delivery of same through any one of its numerous dealers or distributors throughout the United States. The national accounts customer agrees to buy during the specified period from General a minimum dollar amount, but the items which it will purchase are not specified. Any item desired may be purchased. The customer is not limited to the dollar amount set forth in the agreement but rather this amount only serves as a minimum that the customer must purchase of General’s products during the year in order to get the benefits of a favored price. It is evident that these national accounts are sales by General to its customer and the arrangement is one whereby Massart merely delivers a product which is sold by General. Under this unique set-up Massart is an agent or intermediary of the defendant, The General Tire and Rubber Company. Although, under the close relationship between General and Massart, the tires (or other products) received by the national accounts customers are technically owned by Massart, this ownership is merely one of convenience between the parties, and is resolved by a simple bookkeeping entry between them, in such transactions.
The fact that General does not, as such, operate a retail outlet in Lafayette Parish *354 does not prevent it from being categorized as doing business in this parish. Obviously it has a very close business association with Massart. Under this arrangement, Mas-sart can be classified as an agent which sells General’s products for a commission. General’s national accounts in Lafayette Parish are substantial, and amount to an average of $2800.00 monthly or some $33,-000.00 annually. Certainly it is not a case of occasional and isolated sales which would be exempt under Sec. 1.02 of the ordinance.
Having concluded that General is a dealer as defined in the ordinance in question, and that it makes sales at retail of its national accounts in Lafayette Parish, we now consider appellant’s contention that the imposition of the sales tax deprives it of its constitutional rights of due process as set out under the Fourteenth Amendment of the United States Constitution and Article I of the Constitution of Louisiana.
The United States Supreme Court in numerous decisions has set out the prerequisite of some “definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.” Scripto, Inc. v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660; Miller Bros. Co. v. State of Maryland, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744.
General contends that there is no definite or minimum connection or nexus between the Lafayette Parish School Board and it, as required by the mandate of the United States Supreme Court. Although General is authorized to do business in the State of Louisiana, the school board nevertheless must show some connection between it (the Board) and General. We believe this has been shown, and that the test enunciated by the referred to United States Supreme Court decisions has been met. In the case of Miller Bros. Co. v. State of Maryland, supra, our highest court found no minimum connection or nexus between the State of Maryland and Miller Bros. In that case Miller Bros, maintained a retail store at Wilmington, Delaware and residents of the State of Maryland came to purchase goods thereat. Utilizing its sales and use tax statute the State attempted to impose its conditions upon Miller Bros, and seized one of Miller’s trucks which had gone into Maryland for the purpose of making a delivery. The court, in effect, ruled that Miller Bros, did not do business within the confines of the State of Delaware and that, therefore, it did not subject itself to the taxing power of the State of Maryland. The court distinguished the status of Miller Bros, from that of a merchant entering a state and engaging in admittedly taxable retail business. It is obvious that the facts of the Miller Bros, case are distinguishable from the facts of the case herein.
In the case of General Trading Co. v. State Tax Comm., 322 U.S. 335, 64 S.Ct. 1028, 88 L.Ed. 1309 the high court approved liability for the collection of a sales tax. That was a case of an out-of-state merchant entering the taxing state through traveling sales agents to conduct continuous local solicitation followed by delivery of ordered goods to the customers.
In Miller Bros., supra, although the high court did not allow the imposition of the tax, it nevertheless recognized, in discussing the facts in the General Trading Co. case, supra, that the court could properly approve a state’s decision to regard such a rivalry (the out-of-state merchant entering the taxing state through traveling sales agents) with its local merchants as equivalent to being a local merchant. The court further distinguished the active and aggressive operation within a taxing state from the occasional delivery of goods sold at an out-of-state store. Certainly the method of operation utilized by General in this case did not result in an occasional sale by it in Lafayette Parish as evidenced by the dollar volume of sales referred to herein and certainly its method of operation can be regarded as a competitive type operation with other merchants in Lafayette Parish.
*355 The facts in the Scripto, Inc. case, supra, are reasonably comparable to the facts of this case. There the United States Supreme Court found that there was such a minimum connection or nexus between the State of Florida and Scripto, Inc. In that case there were 10 salesmen or brokers working within the State of Florida who took orders for goods and sent these orders out of state to various manufacturers whom they represented, including Scripto. The Florida customers made payment directly to Scripto and the Florida salesmen or brokers were paid an agreed commission by Scripto for soliciting and obtaining the orders. Scripto had no stores or retail outlets as such in the State of Florida. In that case, the Supreme Court stated:
“There must be, as our Brother Jackson stated in Miller Bros. Co. v. State of Maryland, 1954, 347 U.S. 340, 344-345, 74 S.Ct. 535, 539, 98 L.Ed. 744, ‘some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.’ We believe that such a nexus is present here. First, the tax is a nondiscriminatory exaction levied for the use and enjoyment of property which has been purchased by Florida residents and which has actually entered into and become a part of the mass of property in that State. * * * appellant has 10 wholesalers, jobbers, or ‘salesmen’ conducting continuous local solicitation in Florida and forwarding the resulting orders from that State to Atlanta for shipment of the ordered goods. The only incidence of this sales transaction that is nonlocal is the acceptance of the order. True, the ‘salesmen’ are not regular employees of appellant devoting full time to its service, but we conclude that such a fine distinction is without constitutional significance. The formal shift in the contractual tagging of the salesman as ‘independent’ neither results in changing his local function of solicitation nor bears upon its effectiveness in securing a substantial flow of goods into Florida * * * ”
Whatever fine distinctions there may be between the facts of the Scripto, Inc. case, and those of this case are distinctions without differences insofar as nexus is concerned, and in fact are without constitutional significance.
The facts and circumstances under which General operates in Lafayette Parish with its national accounts customers as set out hereinabove, amply supply the necessary minimum connection or nexus between the Lafayette Parish School Board and The General Tire and Rubber Company upon which to base the imposition of the sales tax under the ordinance herein.
To allow General to operate in Lafayette Parish as it does without subjection to the referred to tax would be, in effect, to allow it to go into that parish and compete with local merchants for large accounts without charging the sales and use tax due within Lafayette Parish.
For the above and foregoing reasons we conclude that The General Tire and Rubber Company is a dealer as defined in the ordinance in question and that it makes sales at retail of its national accounts in Lafayette Parish and further that the imposition of the sales tax in question does not deprive it of its constitutional rights of due process as guaranteed under the Constitutions of the United States and the State of Louisiana and accordingly the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.